## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDREW VOIGT,                                )
                                             )
          Plaintiff,               )
                                             )
          v.                        )        Civil Action No. 21-378
                                             )
FLUOR MARINE PROPULSION, LLC,                )
                                             )
          Defendant.               )

## MEMORANDUM OPINION

In this lawsuit, Plaintiff Andrew Voigt ("Plaintiff"), proceeding *pro se*,[1] alleges that his employer, Defendant Fluor Marine Propulsion, LLC ("FMP"), discriminated against him because of his disability by failing to provide him with a reasonable accommodation and by failing to engage in the interactive process designed to allow resolution of his request for an accommodation, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (Docket No. 1). Presently before the Court is FMP's Motion for Summary Judgment and brief in support (Docket Nos. 32, 33), Plaintiff's brief in opposition (Docket No. 38), and FMP's reply (Docket No. 43). In addition to the motion and briefs, the Court has considered the parties' concise statements of material facts and responses thereto, as well as the appendices filed in conjunction with the briefs. (Docket Nos. 34, 39, 40, 45).

For the reasons set forth herein, FMP's motion is granted.

---

[1] Although Plaintiff was previously represented by counsel in this case, he is currently proceeding *pro se*. On April 19, 2022, Plaintiff filed a Motion to Proceed Pro Se and to Withdraw as Counsel, in which he informed the Court that discovery had ended and there were no known discovery issues, that a post discovery status conference was scheduled, that he had informed his counsel (Erik M. Yurkovich, Esq.) that he wished to proceed *pro se* and counsel would no longer be needed, and that he had acquired a PACER account and could view the docket. (Docket No. 27). The Court then ordered both Plaintiff and Mr. Yurkovich to participate in the post discovery status conference, which they did. (Docket Nos. 28, 29). After the conference, the Court issued an Order granting Plaintiff's motion, withdrawing Mr. Yurkovich as counsel, and permitting Plaintiff to proceed *pro se*. (Docket No. 30). In that Order, the Court further indicated to Plaintiff that his *pro se* status does not excuse him from applicable deadlines or from otherwise abiding by applicable rules of court. (*Id.*).

## I. **BACKGROUND**[2]

Since the parties are well-acquainted with the factual background of this case, the Court will present here an abbreviated version of the facts that are relevant to the motion presently before the Court.[3] FMP contracts with the United States Navy and the United States Department of Energy to design, maintain, test, and do other related work on nuclear reactors that are used to power and propel Navy surface ships and submarines. (Docket Nos. 34, ¶ 1; 39, ¶ 1). FMP operates the Bettis Atomic Power Laboratory (the "Bettis facility" or "facility"), located in West Mifflin, Pennsylvania. (Docket Nos. 34, ¶ 2; 39, ¶ 2). Plaintiff began working at the Bettis facility in 2016 as an engineer in the quality assurance department. (Docket Nos. 34, ¶ 13; 39, ¶ 13). In this position, Plaintiff oversees the manufacturing of components that go into nuclear

---

[2] The relevant facts are derived from the undisputed evidence of record, and the disputed evidence of record is read in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

[3] The Court notes that, in responding to FMP's Motion for Summary Judgment, Plaintiff has failed to comply fully with the Local Rules of Court for the Western District of Pennsylvania. Specifically, Plaintiff has failed to file a proper responsive concise statement in accordance with Local Rule 56.C.1, which requires that the party opposing a motion for summary judgment file:

> A separately filed concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by:
>> a. admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material;
>> b. setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety ... with appropriate reference to the record ...; and
>> c. setting forth in separately numbered paragraphs any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the Court to determine the motion for summary judgment.

LCvR 56.C.1.

The rule further specifies that, in any party's concise statement, "[a] party must cite to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record supporting the party's statement, acceptance, or denial of the material fact." LCvR 56.B.1. Instead, Plaintiff's submission contains many responses that offer only a general denial without citing to any part of the record, while certain other responses provide a denial along with additional allegations without citing to any evidence of record for support.

Therefore, in accordance with Local Rule 56, alleged material facts set forth in FMP's statement of undisputed material facts will, for the purpose of deciding its motion for summary judgment, be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement, with appropriate reference to the record. *See* LCvR 56.E, 56.C, 56.B; Fed. R. Civ. P. 56(e). Additionally, averments of fact contained in Plaintiff's Response which cite no record evidence in support will, likewise, be disregarded.

reactor cores on Navy ships and submarines to assure that they are correctly built.  (Docket Nos. 34, ¶ 14; 39, ¶ 14).  The Bettis facility is subject to extensive security restrictions, including a requirement that the facility's employees who handle Classified documents must perform Classified work on a secure computer system at the facility.[4]  (Docket Nos. 34, ¶¶ 3, 10, 11; 39, ¶¶ 3, 10, 11).

In April 2020, FMP communicated to its employees that it expected and desired, but did not require, employees at the Bettis facility to wear face masks due to the COVID-19 pandemic. (Docket Nos. 34, ¶ 15; 39, ¶ 15).  In July 2020, FMP determined that community spread of COVID-19 was increasing.  (Docket Nos. 34, ¶ 18; 39, ¶ 18).  Therefore, on August 3, 2020, the General Manager of the Naval Nuclear Laboratory ("NNL") issued a memorandum ("Mandatory Face Coverings Memorandum") communicating to its employees that "effective August 5, 2020, whenever you could come within six feet of someone else, you must wear a face covering on-site at all NNL locations," which included the Bettis facility.  (Docket Nos. 34, ¶¶ 19, 21; 39, ¶¶ 19, 21).

Plaintiff alleges that, in May 2020, he "suffered from [Post-Traumatic Stress Disorder ("PTSD")] from attempting to wear COVID-19 masks relating to his prior military service." (Docket No. 1, ¶ 9).  In response to the Mandatory Face Coverings Memorandum, Plaintiff requested from his employer permission not to wear a face covering at work.  (Docket Nos. 34, ¶ 22; 39, ¶ 22).  To support his request – and because a Bettis Medical administrative assistant

---

[4]      The Bettis facility's extensive security restrictions are particularly relevant here, as they pertain to the availability of reasonable accommodations under the circumstances presented in this case.  The Bettis facility's security restrictions undisputedly include the following:  the Bettis Facility is gated or fenced or walled off; it is guarded by an armed security force 24 hours per day; individuals need a government-issued security clearance badge to access the facility; it limits access to individuals who meet government security restrictions; visitors may only enter the facility's secured area on very limited occasions, if those visitors meet certain requirements and are escorted by someone with the appropriate security clearance; for security reasons, employees are not permitted to bring their personal cell phones into the facility; and the facility's employees handle Classified documents, must perform Classified work on a secure computer system at the facility, and are required to lock Classified documents in safes located at the facility.  (Docket No. 34, ¶¶ 3-12; 39, ¶¶ 3-12).

had directed Plaintiff to use the form on the Bettis Medical intranet site – on August 4, 2020, Plaintiff completed a Medical Inquiry Form, a form found on that site.  (Docket Nos. 34, ¶ 25; 39, ¶ 25).  In response to the form's question asking if he had "a physical or mental impairment," Plaintiff answered, "No," and he also answered various related questions in the negative, but Plaintiff indicated separately on the form, "My concentration, focus, and mental health are significantly impacted if a mask or faceshield is required."  (Docket Nos. 34, ¶¶ 26, 31; 39, ¶¶ 26, 31; 40 at 13-14).

While he waited for a response to his request, Plaintiff continued to work at the Bettis facility, Plaintiff was permitted to telework when he could do so in compliance with the applicable security restrictions, and Plaintiff's supervisor, Kevin Kostrobala, did not direct or require Plaintiff to wear a face covering at work.  (Docket Nos. 1, ¶¶ 11, 16; 9, ¶¶ 11, 16; 45, ¶ 45-A).

On September 22, 2020, the Bettis Medical department emailed Plaintiff to inform him that he had previously completed the wrong form, directed him to the correct form, and instructed him how to set up an appointment with its nurse practitioner, Holly Coccia.  (Docket Nos. 1, ¶¶ 22, 23; 9, ¶¶ 22, 23).  On September 24, 2020, Plaintiff submitted the correct form, a Request for Reasonable Accommodation.  (Docket Nos. 34, ¶ 32; 39, ¶ 32; 40 at 16-18).  On that request, Plaintiff again indicated that his "condition is not a disability or disorder."  (Docket Nos. 34, ¶ 33; 39, ¶ 33; 40 at 17).  However, as before, Plaintiff also stated, among other things, "My concentration, focus, and mental health are significantly impacted if I wear a mask or face shield," and, "Wearing a mask has impacted my ability to focus and concentrate on the complex technical details required to perform as an Engineer in Quality Assurance."  (Docket No. 40 at 16-17).

4

Ms. Coccia then interviewed Plaintiff and reviewed his medical documentation pertaining to not wearing a mask despite the company's mandatory mask requirement. (Docket No. 40 at 12). After the interview, Ms. Coccia informed Bettis Human Resources ("HR") Representative Stephanie Divelbliss that Plaintiff's request for accommodation was "medically validated." (*Id.*).

Soon thereafter, on October 28, 2020, Plaintiff met with Ms. Divelbliss and Mr. Kostrobala, at which time possible accommodations for Plaintiff were explored. (Docket Nos. 1, ¶¶ 28-31; 9, ¶¶ 28-31). Plaintiff suggested that he could work without a mask and rely on social distancing, that he could work less busy, off-hour shifts, or that he could work from home. (Docket Nos. 1, ¶ 29; 9, ¶ 29). Based its perceived state of the COVID-19 pandemic at that time, in 2020, FMP determined that it would pose an unacceptable risk for Plaintiff simply not to wear a face covering when interacting with coworkers at the Bettis facility. (Docket Nos. 34, ¶ 37; 39, ¶ 37). Notably, it is impossible for employees at the Bettis facility to maintain at least six feet of separation when entering shared areas such as hallways, restrooms, and the facility's side entrance, which eliminates the possibility of relying on social distancing alone as a reasonable accommodation. (Docket Nos. 34, ¶ 40; 39, ¶ 40). Although Plaintiff raised the possibility of doing full-time telework, FMP determined that allowing Plaintiff to telework full-time was not a reasonable option because his position requires significant onsite presence due to government security restrictions, since handling Classified Navy and nuclear information makes up the bulk of his job.[5] (Docket Nos. 1, ¶ 29; 9, ¶ 29; 34, ¶ 38; 39, ¶ 38; 40 at 46). FMP also considered transferring Plaintiff to another position at the Bettis facility or permitting him to work alternative hours when fewer employees would be in common areas, but it determined that a transfer was not a reasonable option because, regardless of his position, Plaintiff would still

---

[5]     Nevertheless, FMP had previously allowed Plaintiff to telework when he could, such as when he was doing online training that did not involve government Classified information. (Docket Nos. 34, ¶ 38; 39, ¶ 38).

encounter coworkers when he needed to be in common areas. (Docket Nos. 34, ¶¶ 39, 40; 39, ¶¶ 39, 40; 40 at 46). Additionally, a basic function of Plaintiff's quality assurance job was that he work during hours when persons with whom he needed to interact were also available. (Docket Nos. 43 at 9; 43-1 at 25-26).

During the October 28, 2020, meeting, Ms. Divelbliss offered Plaintiff the option of wearing a company-provided face shield rather than a mask, but Plaintiff declined, or was unable, to do so. (Docket Nos. 1, ¶ 31; 9, ¶ 31; 34, ¶ 44; 39, ¶ 44).[6] FMP also offered to allow Plaintiff to take an unpaid leave of absence. (Docket Nos. 34, ¶ 46; 39, ¶ 46). After further discussion between Ms. Divelbliss and Plaintiff, and following conferral with management, Plaintiff was afforded the option to apply for short-term disability leave, which would provide him with paid leave rather than unpaid leave. (Docket Nos. 34, ¶ 46; 38 at 3-4; 39, ¶ 46). After the meeting, therefore, Divelbliss gathered and provided Plaintiff with contact information for the manager of the Bettis short-term disability program. (Docket No. 38 at 5). In October 2020, Plaintiff applied for and began a period of paid short-term disability leave. (Docket Nos. 34, ¶ 47; 38 at 5; 39, ¶ 47). Such leave provided Plaintiff with full pay for several months, followed by a period during which he received 60% of his regular pay. (Docket Nos. 43 at 3; 43-1 at 21-22).

While on leave, and at the direction of doctors at the Veterans Administration, Plaintiff went through exposure desensitivization training (which involved wearing a mask for gradually increased times each day), and eventually Plaintiff's doctor medically cleared Plaintiff to return to work as he appeared able to wear a mask for short periods of time. (Docket Nos. 43 at 2-3;

---

[6]     One of FMP's statements of material fact, which Plaintiff disputes, includes a statement that Plaintiff was unwilling to wear a face shield, and Plaintiff argues that the deponent upon whose testimony such statement relies has never spoken to him. (Docket Nos. 34, ¶ 44; 39, ¶ 44). However, the Court notes that Plaintiff himself indicates that he could not wear a face shield and he referred to that issue in his requested accommodations. (Docket No. 38 at 4-5).

43-1 at 33-34, 37-38; 43-2).  Prior to Plaintiff's return to work in April 2021 at the end of his leave period, Plaintiff asked his manager to have a plastic door installed on his cubicle.  (Docket No. 39, ¶ 49-B).  Plaintiff's manager agreed, a door was installed, and upon his return Plaintiff kept this sliding door closed while at work.  (*Id.*).  Before his return, Plaintiff also requested that during the workday FMP permit him to take breaks to walk outside, and that he not be required to wear a face covering outside when he could maintain social distancing.  (Docket Nos. 34, ¶ 50; 39, ¶ 50).  FMP indicated that all employees were permitted to take such breaks so there was no need to request such an accommodation, thus agreeing to both requests.  (Docket Nos. 34, ¶ 51; 39, ¶ 51).  In conjunction with his doctor, Plaintiff also requested partial hours for his first two weeks back to work, which request was granted by FMP.  (Docket Nos. 39, ¶ 50-A; 45, ¶ 50-A).

On August 3, 2021, FMP reinstated its previous requirement that employees wear face masks while working indoors at the Bettis facility.  (Docket Nos. 34, ¶ 52; 39, ¶ 52).  That same day, Plaintiff submitted to FMP another written Request for Reasonable Accommodation, asking that he not be required to wear any face covering while working at the Bettis facility.  (Docket Nos. 34, ¶¶ 53, 54; 39, ¶¶ 53, 54).  FMP responded to Plaintiff's request by utilizing a converted conference room as a private office and providing him with such alternate work area, complete with floor-to-ceiling walls and a door, so that he could work alone behind a closed door without having to wear a face covering.[7]  (Docket Nos. 34, ¶ 55; 39, ¶ 55).

---

[7]       Although Plaintiff was still required to wear a mask when in areas where he could closely encounter others, Plaintiff indicates that he found ways to skirt compliance with this rule (such as by holding his mask against his face, or by having a water bottle or bag of snacks nearby since masks were not required when eating or drinking), but there is no evidence showing that FMP knew of or approved such conduct, nor does it show that Plaintiff is entitled to a legal remedy.  (Docket No. 39, ¶ 49-B).  Furthermore, to the extent Plaintiff may argue that he should have been able to omit wearing a mask since he was not required to wear a mask for approximately five months in 2020 prior to his taking leave, the Court notes that masks were optional during most of that time, part of that period included the time it took to resolve Plaintiff's request for accommodation, and an employer is not required to continue an accommodation that it tried for a period of time.  *See Rabb v. School Bd. Of Orange Cnty.*, 590 F. App'x

Plaintiff subsequently filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a neutral letter of dismissal. (Docket No. 1, ¶ 2). On March 22, 2021, Plaintiff timely filed the present action. (Docket No. 1). In his Complaint, Plaintiff alleges a single claim of disability discrimination under the ADA based on FMP's alleged failure to reasonably accommodate Plaintiff's disability and failure to engage in a meaningful interactive process in good faith. (Docket No. 1 at 4-5). FMP has filed its Motion for Summary Judgment, the motion has been fully briefed by the parties, and it is now ripe for decision.

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). A disputed fact is material if it might affect the outcome under the substantive law. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998)

---

849, 853 (11th Cir. 2014) (noting that an employer that bends over backwards to accommodate a disabled worker must not be punished for its generosity by being deemed to have conceded the reasonableness of a far-reaching accommodation); *Walton v. Mental Health Ass'n*, 168 F.3d 661, 670-71 (3d Cir. 1999) (in which the court did not permit an employer's past instances of providing unpaid leave to show that such leave was a reasonable accommodation, since the court noted that those instances of unpaid leave exceeded the requirement of reasonable accommodation under the ADA). Here, Plaintiff does not specifically argue that simply continuing not to wear a mask while working onsite, without any additional restrictions or accommodations, was a reasonable accommodation under the ADA.

(citing *Anderson*, 477 U.S. at 247-48).   Summary judgment is unwarranted where there is a genuine dispute about a material fact, that is, one where a reasonable jury, based on the evidence presented, could return a verdict for the non-moving party with regard to that issue.   *See Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility.   *See Boyle*, 139 F.3d at 393.  The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must establish the existence of each element for which it bears the burden of proof at trial.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the burden is on the non-movant to search the record and detail the material controverting the movant's position.   *See Schulz v. Celotex Corp.*, 942 F.2d 204, 210 (3d Cir. 1991).   Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial.   *See Celotex v. Catrett*, 477 U.S. at 324.

Courts must liberally construe the submissions of *pro se* litigants.   See *Hena v. Vandegrift*, 612 F. Supp. 3d 457, 472 (W.D. Pa. 2020) (citing cases including *Haines v. Kerner*, 404 U.S. 519 (1972)).   While such submissions are read to "raise the strongest arguments suggested therein," a court's "forgiving interpretation does not render immune from dismissal or summary judgment claims that lack procedural or factual viability."   *Id.* (internal quotation marks and citations omitted).   Thus, the same summary judgment standard that applies to litigants who are represented by counsel also applies to *pro se* litigants, and "[b]ald assertions

unsubstantiated by record evidence will not defeat a well-supported motion for summary judgment." *Id.* (internal quotation marks and citations omitted).

## III.  <u>DISCUSSION</u>

The ADA prohibits discrimination based on disability against "qualified individual[s] on the basis of disability" as to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Under the ADA, discrimination includes the failure to provide a reasonable accommodation for "the known physical or mental limitations of an otherwise qualified individual with a disability," unless the individual's employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business."  42 U.S.C. § 12112(b)(5)(A).  The EEOC's administrative regulations recognize that, in determining the appropriate reasonable accommodation for an individual, an employer may need "to initiate an informal, interactive process with the individual with a disability in need of the accommodation."  29 C.F.R. § 1630.2(o)(3).

In his Complaint, Plaintiff avers that he is disabled under the ADA because he suffers from PTSD related to his prior military service.  Plaintiff further alleges that, in the summer and fall of 2020 – during the period leading up to and resulting in his taking short-term disability leave – FMP failed to provide him with a reasonable accommodation for his disability as required by the ADA and to engage in good faith in the interactive process to successfully resolve his accommodation request.  (Docket Nos. 1, ¶¶ 35, 36; 38 at 4).  Plaintiff asserts that, as a result of that discrimination, he lost valuable wages and benefits in connection with the period of short-term disability leave that he ultimately took.

In moving for summary judgment, FMP argues that: 1) Plaintiff offers no evidence showing that he is disabled under the ADA and, rather, Plaintiff has admitted repeatedly that he is not disabled; 2) Plaintiff offers no evidence showing that FMP failed to provide him with a reasonable accommodation and failed to engage in the interactive process in good faith; and 3) even if Plaintiff could prove the *prima facie* elements of his ADA claim, that claim fails because his requested accommodation (to work onsite without a mask) posed a direct threat to himself and his coworkers.

### A.  Whether Plaintiff Is Disabled Under the ADA

Because Plaintiff presents no direct evidence of discrimination, the familiar burden-shifting framework set forth in *McDonnell Douglas* applies to Plaintiff's ADA claim.[8]  *See Fowler v. AT&T, Inc.*, 19 F.4th 292, 298 (3d Cir. 2021) (describing the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Under such framework, to establish a *prima facie* case of discrimination under the ADA, a plaintiff must prove the following elements:  1) he was disabled within the meaning of the statute; 2) he was subjected to an adverse employment action; 3) he was otherwise qualified for his position; and 4) he suffered an adverse employment action because of his disability.  *See id.* at 299.  As noted by the Court of Appeals for the Third Circuit, in ADA cases "we tend to truncate this into a three-prong test by combining prongs 2 and 4 into a single prong asking whether the employee 'has suffered an

---

[8]        An ADA discrimination claim is analyzed under the familiar burden-shifting of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).  *See Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 699-700 (W.D. Pa. 2014).  Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *See id.* at 699 (citing *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007); *McDonnell Douglas*, 411 U.S. at 802).  Then, if the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for taking the adverse employment action.  *See id.* at 699-700.  If the employer carries its burden, the burden shifts back to the plaintiff who must prove by a preponderance of the evidence that the employer's proffered legitimate reason was merely pretext for discrimination, and not the actual motivation underlying the adverse employment action.  *See id.* at 700 (citing *Wishkin*, 476 F.3d at 185; *Burdine*, 450 U.S. at 252–53; *McDonnell Douglas*, 411 U.S. at 804).

adverse employment action because of that disability.'"  *Id.* at 299 n.3 (quoting *McNelis v. Pa.* *Power & Light Co.*, 867 F.3d 411, 414 (3d Cir. 2017)).  However, for purposes of clarity and following the parties' briefing, the Court refers herein to the four-prong framework which, in any event, "does not alter the substantive elements of the claim[]."  *Id.*

First, FMP argues that it is entitled to summary judgment as to Plaintiff's ADA claim because Plaintiff has not shown the first element of a *prima facie* case of discrimination, that he is "disabled" under the ADA.  A plaintiff needs more than a diagnosed impairment  in order to be considered "disabled" under the ADA.  *See Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 142 (3d Cir. 2011).  Instead, a person must have "a physical or mental impairment that substantially limits one or more major life activities," must have "a record of such an impairment," or must have been "regarded as having such an impairment."  42 U.S.C. § 12102(1).

FMP argues that Plaintiff claims to be disabled (Docket No. 1, ¶ 34), but he has not proven that a mental or physical impairment substantially limits one or more of his major life activities.  FMP asserts that the forms submitted by Plaintiff in support of his request for accommodations, on which he did not check boxes indicating that he has an impairment that limits one or more major life activities, evince Plaintiff's admission that he is not disabled.  Specifically, in response to the Medical Inquiry Form's request that Plaintiff describe any physical or mental impairment that he has, he left the answer blank.  (Docket Nos. 34, ¶ 27; 34-2 at 1; 39, ¶ 27).  In response to the form's question, "Does the impairment substantially limit a major life activity as compared to most people in the general population?" Plaintiff also answered, "No."  (Docket Nos. 34, ¶ 28; 34-2 at 1; 39, ¶ 28).  In response to the form's list of 20 major life activities that may be affected by an impairment that he has (also listing an "Other"

choice), Plaintiff did not indicate that a physical or mental impairment affected any of these activities.  (Docket Nos. 34, ¶ 29; 34-2 at 1; 39, ¶ 29).  In response to the form's list of 18 major bodily functions that may be affected by an impairment that he has (also listing an "Other" choice), Plaintiff did not indicate that a physical or mental impairment affected any of these functions.   (Docket Nos. 34, ¶ 30; 34-2 at 1; 39, ¶ 30).   On his Request for Reasonable Accommodation, Plaintiff wrote that his "condition is not a disability or disorder."  (Docket Nos. 34, ¶ 33; 34-5 at 2; 39, ¶ 33).  FMP also proffers Plaintiff's deposition testimony that, consistent with his written statements indicating that he does not have a disability or disorder that limits a major life activity, he can engage successfully in basic life activities, and he has performed his job successfully and positively at all relevant times.  (Docket Nos. 34, ¶¶ 34, 35; 39, ¶¶ 34, 35).

However, the Court notes that, while Plaintiff did fill out the relevant forms as FMP indicates (and he did not check the various boxes that would have indicated that he has a disabling impairment), Plaintiff provided other responses on the forms that described his alleged limitation.  For example, on his Medical Inquiry Form, in response to the question, "What limitation(s) is interfering with job performance or accessing a benefit of employment?" Plaintiff stated, "The new requirement to wear a mask or face shield significantly impacts my mental health, ability to focus, and concentration due to post-traumatic stressors (PTS) related to my experiences during my military deployments."  (Docket No. 34-2 at 2).  Additionally, in response to that form's question as to job functions or benefits of employment that the employee is having trouble performing or accessing because of his limitations, Plaintiff answered, "My concentration, focus, and mental health are significantly impacted if a mask or faceshield is required."  (*Id.*).  Similarly, on his Request for Reasonable Accommodation, Plaintiff indicated that his concentration, focus, and mental health are significantly impacted if he wears a face

covering "due to post-traumatic stressors (PTS) related to experiences during my military deployments." (Docket No. 34-5 at 1-2). Plaintiff also noted on that form, "The adverse impacts to my focus, concentration, and mental health were verbally discussed with Bettis medical staff the morning of 18 June 2020. At that time, I was told that if I was asked why I did not wear a mask that I could reply with 'It aggravates a condition that I have.'" (*Id*. at 3).

Furthermore, Plaintiff proffers evidence showing that FMP found him to have a disability. Specifically, Plaintiff points to email correspondence from Bettis HR's Ms. Divelbliss to Ms. Coccia of Bettis's Medical department, asking, "So, from your standpoint, Mr. Voigt has a medical condition that would fall under ADA protection and his request to not wear a mask is a reasonable accommodation despite the mandatory mask requirement by company? Please let me know." (Docket No. 40 at 12). In response, Ms. Coccia answered, "I have interviewed Mr. Voigt and reviewed medical documentation pertaining to his request. At this time, his request for accommodation is medically validated." (*Id.*).

Upon review of the parties' proffered evidence regarding Plaintiff's alleged disability, and drawing all inferences in a light most favorable to Plaintiff as is required when considering a defendant's motion for summary judgment, the Court concludes that Plaintiff has shown evidence from which a reasonable jury could find that he is disabled under the terms of the ADA. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502 (3d Cir. 2010). Accordingly, the Court finds that Plaintiff has proffered evidence sufficient to establish the first element of his *prima facie* case of disability discrimination.

**B.** **Whether FMP Failed to Provide a Reasonable Accommodation**

FMP also argues that, even if Plaintiff is disabled under the ADA, to the extent he alleges that FMP discriminated against him by failing to reasonably accommodate his disability, he

14

cannot establish the interrelated second and fourth prongs of his *prima facie* case: that he was subjected to an adverse employment action, and that he suffered such adverse employment action because of his disability. A claim based on an employer's failure to accommodate an employee's disability "may be viewed simply as a type of discrimination claim, where the relevant adverse employment action is the employer's 'refus[al] to make reasonable accommodations for a[n employee's] disabilities.'" *Fowler v. AT&T, Inc.*, 19 F.4th at 306-07 (quoting *Colwell v. Rite Aid Corp.*, 602 F.3d at 504). Under the ADA, "reasonable accommodation" includes:

> . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B). Notably, reasonable accommodation does not obligate an employer to eliminate or reallocate any essential functions of an employee's job. *See* 29 C.F.R. 1630.2(o); *Rice v. Erie Indem. Co.*, No. 1:06-cv-176-SJM, 2008 WL 11509304, at *17 (W.D. Pa. Sept. 30, 2008). Moreover, "[a]n employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Yovtcheva v. City of Phila. Water Dep't*, 518 F. App'x 116, 122 (3d Cir. 2013) (internal quotation marks and citation omitted).

Issues concerning what constitutes a reasonable accommodation for an employee and an undue burden on an employer are resolved in accordance with the framework set forth by the Third Circuit Court of Appeals in *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 670 (3d Cir. 1999). Under such analysis, the plaintiff bears the initial burden of proving that he is otherwise qualified for the position in question, and if an accommodation is needed, the plaintiff

must show, as part of his burden of persuasion, that an effective accommodation exists that would render him otherwise qualified.  *See Rice*, 2008 WL 11509304, at *17.  As the Third Circuit explained:

> On the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits.  These two requirements placed on the plaintiff will permit district courts to grant summary judgments for defendants in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly.

*Walton*, 168 F.3d at 670 (internal quotation marks and citation omitted).  "If the plaintiff successfully makes a *prima facie* showing that there exists a reasonable accommodation which would make [him] qualified, the burden then shifts to the defendant to prove either that the accommodation is unreasonable or that it creates an undue hardship for the defendant."  *Rice*, 2008 WL 11509304, at *17 (citing *Walton*, 168 F.3d at 670).

In this case, the Court finds that Plaintiff has not met his initial burden of identifying a reasonable accommodation that would have allowed him to perform the essential functions of his job, since the potential accommodations he identifies are clearly ineffective on their face.  Here, Plaintiff identifies "three reasonable options for accommodations" that he contends FMP "failed to discuss" with him:  "telework, transfer, and working less busy times in the office (off-shift hours)."  (Docket No. 38 at 6).  However, Plaintiff's claim that these options were all reasonable appropriate accommodations is simply not factually or legally supported here.  Importantly, Plaintiff has cited to no evidence of record to show the availability of such options, such as evidence of the extent of telework by other employees at the facility, or the comparability of such other employees' jobs to Plaintiff's job, or the availability of other positions to which Plaintiff could transfer that would not have similar onsite work requirements.  *See Fowler v. AT&T, Inc.*, 19 F.4th at 307 (explaining that the plaintiff bears the burden of proving that he is

overwise qualified for a position, and if an accommodation is needed, the plaintiff must show that an effective accommodation that would render him otherwise qualified exists).  Instead, Plaintiff simply states, "All three of these options are typical practices used by other employees at Bettis so they are reasonable."  (Docket No. 38 at 6).  The lack of evidentiary support for Plaintiff's statement is particularly pertinent here since Navy security restrictions undisputedly require the bulk of Plaintiff's job duties (performing Classified engineering work) to be done onsite at the Bettis facility.  (Docket Nos. 43 at 9; 43-1 at 11-12).  Plaintiff has also presented no evidence of record contradicting FMP's proffered evidence that a basic function of Plaintiff's quality assurance job requires that he work at times when persons with whom he needed to interact were also available (including other Bettis employees, Navy and Department of Energy representatives, and present or potential vendors and suppliers), making work during less busy hours, or off-hours, an ineffective option.  (Docket Nos. 43 at 9; 43-1 at 2-3, 25-26).

Moreover, FMP cites evidence indicating that such accommodations were, in fact, considered prior to Plaintiff's October 28, 2020, meeting with HR and his supervisor, but were deemed to be not feasible for various reasons, so those options were never available reasonable accommodations worthy of discussion.  Specifically, FMP considered allowing Plaintiff to telework, but it determined that it was not a reasonable option due to the Classified nature of his work, which undisputedly required him to work onsite at the Bettis facility.  (Docket Nos. 34, ¶ 38; 39, ¶ 38; 40 at 46).  FMP also considered transferring Plaintiff to a different position or modifying his schedule, but it determined that other positions would still require him to work onsite and wear a face mask when he came into close contact with other people, which Plaintiff admittedly was unable to do, and Plaintiff needed to be available at work when others with whom he interacted were also working.   (Docket Nos. 34, ¶¶ 39, 40; 39, ¶¶ 39, 40).

Additionally, FMP considered the possibility of Plaintiff wearing a face shield instead of a face mask – since wearing face shields had been an effective alternative for other employees who objected to wearing a face mask – and FMP offered to permit Plaintiff to do so, but Plaintiff would not or could not wear a face shield.  (Docket Nos. 34, ¶¶ 43, 44; 38 at 4-5; 39, ¶¶ 43, 44).

Therefore, the Court concludes that Plaintiff has failed to identify a facially plausible accommodation for his disability that would have permitted him to perform the essential functions of his job, nor has he identified any other appropriate vacant position that he could have filled.  Plaintiff has thus failed to proffer evidence showing that he suffered an adverse employment action by virtue of being denied a reasonable accommodation.  Accordingly, FMP is entitled to summary judgment to the extent Plaintiff claims that FMP discriminated against him by failing to provide him with a reasonable accommodation.

### C.    <u>Whether FMP Failed to Engage in the Interactive Process</u>

Plaintiff further alleges that FMP violated the ADA because it failed to engage in good faith in the interactive process which, he contends, would have resulted in finding a reasonable accommodation for his disability.  In moving for summary judgment, FMP argues that Plaintiff has not proffered evidence showing that FMP failed to engage in the interactive process in good faith, and thus, under this theory as well, Plaintiff has failed to establish that he was subjected to an adverse employment action and that such adverse employment action was based on his disability.  Instead, according to FMP, the evidence shows that it engaged in the interactive process in good faith and attempted to accommodate Plaintiff under the difficult circumstances presented.  Further, FMP argues that it did, in fact, provide Plaintiff with a reasonable accommodation (or series of accommodations) – even if they were not the specific accommodations that Plaintiff may have preferred.

As noted, *supra*, the EEOC's administrative regulations provide that, in determining an appropriate reasonable accommodation, "it may be necessary for the [employer] to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3).  That process should "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.*  The EEOC's interpretive guidelines set forth the circumstances that trigger an employer's duty to engage in the interactive process, as follows:

> Once an individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation.  The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability.

29 C.F.R. Pt. 1630, App. § 1630.9.

Notably, an employer's alleged failure to engage in the interactive process is not a separate claim from an alleged failure to provide a reasonable accommodation.  *See Rice*, 2008 WL 11509304, at *18.  "Rather, participation in the interactive process is simply part of the employer's duty to determine if a reasonable accommodation exists." *Id.* (citing *Whelan v. Teledyne Metalworking Prods.*, 226 F. App'x 141, 147 (3d Cir. 2007)).  When an employee bases a failure to accommodate claim on his employer's failure to engage in the interactive process (as Plaintiff does here, *see* Docket No. 38 at 4, 17), in order to show that the employer failed to participate in the interactive process, the disabled employee must demonstrate that: 1) the employer had knowledge of the employee's disability; 2) the employee requested accommodations for that disability; 3) the employer failed to make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably

accommodated but for the employer's lack of good faith.  *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999).

Here, to the extent Plaintiff's failure to accommodate claim is based on the alleged failure to engage in the interactive process, FMP argues that it is entitled to summary judgment because Plaintiff has failed to proffer evidence showing the fourth requirement of such claim:  that a reasonable accommodation existed that would have rendered Plaintiff capable of performing the essential functions of his job.  "At the end of the day, 'a plaintiff in a disability discrimination case who claims that the defendant engaged in discrimination by failing to make a reasonable accommodation cannot recover without showing that a reasonable accommodation was possible.'"  *Rice*, 2008 WL 11509304, at *18 (quoting *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir. 2004)).  "This is true for claims premised on the defendant's alleged failure to engage in the interactive process."  *Id.* (citing *Whelan*, 226 F. App'x at 147).

For the reasons discussed, *see* Section III.B, *supra*, the Court finds that, because Plaintiff has failed to show that a reasonable accommodation existed that would have rendered him capable of performing the essential functions of his job (or another vacant appropriate position) – to the extent his failure to accommodate claim relies on the failure to engage in the interactive process – Plaintiff has failed to establish the fourth requirement of such claim.

Furthermore, to the extent Plaintiff argues that because FMP did not act in good faith, it did not consider additional unnamed accommodations that might have been possible, the Court finds that Plaintiff has not proffered evidence showing that FMP failed to make a good faith effort to assist him in reaching an accommodation.  The ADA's regulations make clear that the interactive process between the employer and the employee is meant to determine appropriate accommodations:

> "This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).  Therefore, it would make little sense to insist that the employee must have arrived at the end product of the interactive process before the employer has a duty to participate in that process.  The EEOC's interpretative guidelines squarely place some of the burden on the employer by stating that "the employer must make a reasonable effort to determine the appropriate accommodation."  29 C.F.R. Pt. 1630, App. § 1630.9 at 359.

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d at 316.

"[T]he process must be interactive because each party holds information the other does not have or cannot easily obtain."  *Id.*  "[T]he interactive process does not dictate that any particular concession must be made by the employer," and the process does not "remove the employee's burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the job's essential functions."  *Id.* at 317.  Thus, "[a]ll the interactive process requires is that employers make a good-faith effort to seek accommodations."  *Id.*  Employers can show their good faith in a number of ways, including that an employer may:

> . . . meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered [the] employee's request, and offer and discuss available alternatives when the request is too burdensome.

*Id.*

Here, Plaintiff specifies in his opposition brief that his claim alleges that, during the summer and fall of 2020, the period resulting in Plaintiff taking short-term disability leave, FMP violated the ADA by failing to engage in the interactive process after Plaintiff made multiple requests for accommodation as instructed by the Bettis Medical department, and by demanding

that Plaintiff wear a face shield during the October 28, 2020, meeting when he had documented in his written requests that a face shield triggered his PTSD.  (Docket No. 38 at 4).

As previously explained, *see* Section I, *supra*, the undisputed evidence of record shows that Plaintiff first requested an accommodation for his disability on August 4, 2020, and that while he waited for a response from FMP, Plaintiff continued to work at the Bettis facility, and Plaintiff's supervisor did not require him to wear a mask.  In response to email correspondence and instruction from the Bettis Medical department, Plaintiff again requested an accommodation by filling out another form on September 24, 2020, at which time Plaintiff also set up an appointment with the facility's nurse practitioner, Ms. Coccia.  Ms. Coccia then met with Plaintiff, reviewed his medical records, and advised Ms. Divelbliss from the Bettis HR department that Plaintiff's request not to wear a mask was "medically validated."

On October 28, 2020, Plaintiff met with Ms. Divelbliss and Mr. Kostrobala, during which meeting various potential accommodations were discussed.  Ms. Divelbliss offered that Plaintiff could wear a company-provided face shield rather than a mask, which Plaintiff could not or would not do, and Ms. Divelbliss also offered that Plaintiff could take a period of unpaid leave. For his part, Plaintiff requested that he be permitted to go mask-free and use social distancing, that he be allowed to work onsite during less busy off-hour shifts, or that he be permitted to work from home rather than at the facility.  The evidence shows that FMP considered whether such options were reasonable but determined that they were not.  As previously discussed, it is undisputedly impossible for an employee to avoid coming into close contact with other persons at the Bettis facility, so even if Plaintiff worked onsite during less busy shifts, he would still come into close contact with some persons.  Additionally, because it was necessary for Plaintiff to work during the same hours that others with whom he needed to interact were working,

changing Plaintiff's schedule to off-hour work was not a reasonable accommodation.  Also, full-time telework was unavailable to Plaintiff because the bulk of his work required that he perform his job onsite in the secure facility.

Additionally, during the October 28, 2020, meeting, Plaintiff and Ms. Divelbliss discussed the possibility of Plaintiff taking a period of short-term disability leave.  Ms. Divelbliss checked with management, who concluded that it would be permissible for Plaintiff to apply for such leave (which would also provide him with the added benefit of paid leave rather than unpaid leave).  After the meeting, Ms. Divelbliss gave Plaintiff the necessary contact information at the Bettis facility.  Thereafter, Plaintiff applied for and received such leave, which provided him with full pay for several months, followed by a period during which he received 60% of his regular pay.  (Docket Nos. 43 at 3; 43-1 at 21-22).

These undisputed facts clearly show that, after Plaintiff requested that he be permitted to work onsite without wearing a mask as an accommodation for his PTSD, FMP did not demand that Plaintiff immediately wear a mask, requested additional information from Plaintiff about his condition and his limitations, and conducted several meetings with Plaintiff, both with medical personnel and with HR.  FMP and Plaintiff discussed what Plaintiff wanted and, based on his requests, FMP offered and discussed available alternatives because Plaintiff's specific requests were not effective options for reasonable accommodations.  Upon consideration of such undisputed evidence, the Court finds that a reasonable jury would be unable to find that FMP failed to engage in the interactive process in good faith.

Moreover, the Court finds that Plaintiff has not proffered evidence from which a reasonable jury could find that there was a breakdown in the informal interactive process, and

that FMP bears responsibility for such breakdown.[9]  During the October 28, 2020, meeting, the discussion ultimately led to Ms. Divelbliss offering that Plaintiff could take a period of paid short-term disability leave, which is the option that Plaintiff proceeded to pursue and accept. Months later, when Plaintiff's period of short-term disability leave expired and he was about to return to work, FMP agreed to his request to work reduced hours for the first two weeks, agreed that Plaintiff could take frequent breaks outside without wearing a mask, and agreed to install a door on Plaintiff's cubicle.  Later, when the mask requirement was reinstated, FMP provided Plaintiff with the use of an office space with floor-to-ceiling walls, which allowed him to work onsite without wearing a mask, except for short periods when he might encounter others in public areas.[10]  Ultimately, while Plaintiff may not have received the accommodation that he initially desired – simply not wearing a mask at work – the employer (rather than the employee) gets to choose the accommodation.  S*ee Yovtcheva*, 518 F. App'x at 121-22; *Diaz v. City of Phila.*, 565 F. App'x 102, 106 (3d Cir. 2014) (holding that the ADA does not "require an employer to provide a disabled employee with the accommodation of [his] choosing"); *Shepard*

---

[9]     Plaintiff appears to make much of the fact that, at the October 28, 2020, meeting, FMP offered that he could wear a company-provided face shield instead of a mask, when he had previously indicated on his requests for an accommodation that he could not wear a mask or a face shield.  The Court notes that those forms, which Plaintiff relies upon, do not uniformly refer to both masks and face shields in response to all questions, and that, in those forms, Plaintiff sometimes refers only to a mask or a "face covering."  (Docket No. 40 at 14, 16-18).  Additionally, FMP had had some success in offering face shields to its employees who were unable to wear masks.  (Docket Nos. 34, ¶ 43; 39, ¶ 43).  Accordingly, the Court concludes that evidence of FMP proposing that Plaintiff could wear a face shield rather than a mask – during the informal interactive process when various options were being explored – is evidence of FMP engaging in the interactive process in good faith, not the opposite, as Plaintiff suggests.

[10]    Although Plaintiff contends that FMP's later-provided accommodations – including installing a cubicle door and providing Plaintiff with a separate office – are irrelevant since he is only alleging that FMP failed to engage in the interactive process and provide him with a reasonable accommodation in relation to his taking a period of short-term disability leave, the Court notes that the interactive process is exactly that – a process.  *See, e.g., Taylor*, 184 F.3d at 316-17 (describing how the interactive process is meant to work), and discussion, *supra*.  In this case, the entirety of the interactive process, including both parties' actions and the series of accommodations that FMP made before and after Plaintiff's short-term disability leave period, provide important context and are relevant to the Court's determination of whether FMP violated its obligations to Plaintiff under the ADA by failing to engage with him in the interactive process in good faith during the period at issue in the Complaint.  Notably, the accommodations that FMP later provided Plaintiff became reasonable options when he returned from his leave and appeared able to tolerate wearing a mask for brief periods.

*v. United Parcel Serv., Inc.*, 470 F. App'x 726, 730 (11th Cir. 2012) (noting that an employer is not required to accommodate an employee in any manner in which he desires).

Therefore, upon consideration of all the evidence of record, the Court finds that Plaintiff has failed to proffer evidence showing that FMP failed to engage in the interactive process in good faith or that FMP was responsible for a breakdown in the interactive process.   While Plaintiff argues, in essence, that the choices of accommodation that FMP ultimately offered to him, to wear a face shield or take a leave of absence, were not sufficient, and that the meeting with Ms. Divelbliss during which these options were presented was also not sufficient to be considered good faith engagement in the interactive process, the evidence of record shows that the interactive process that occurred here was far more involved than Plaintiff alleges.

Because the Court finds that Plaintiff has not proffered evidence to support a reasonable inference that FMP failed to engage in good faith in the interactive process, Plaintiff cannot satisfy this crucial element to prevail on a discrimination claim based on a theory that FMP violated its duties under the ADA to engage meaningfully in the interactive process. Additionally, as explained, *supra*, even if Plaintiff could establish bad faith on FMP's part, his claim would still fail as a matter of law because he cannot satisfy the fourth element of his interactive process case, that he ultimately would have been accommodated by a meaningful interactive process.[11]  *See Rice*, 2008 WL 11509304, at *24-25 (citing *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 234-35 (3d Cir. 2000)).

---

[11]     When an employee and an employer engage in the interactive process in good faith, but are unable to identify a reasonable accommodation, and if such employee is not otherwise able to perform the essential functions of his job, then that employee is not "otherwise qualified," the third element of a discrimination *prima facie* case, as set forth in *Fowler*, 19 F. 4th at 307.  Because the Court finds that Plaintiff has not established the requisite *prima facie* elements of his ADA failure to accommodate claim, the Court need not address FMP's additional argument that Plaintiff's claim also fails because his requested accommodation (to work onsite without a mask) posed a direct threat to himself and his coworkers since OSHA, the EPA, and the EEOC had all determined that employers may implement necessary and reasonable actions to mitigate the direct threat of COVID-19 to the safety of its employees.

### D.   <u>**Summary**</u>

Accordingly, the Court finds that Plaintiff has failed to establish the second and fourth elements of his *prima facie* case of discrimination under the ADA, that he suffered an adverse employment action, and that he suffered such adverse employment action because of his disability.

## IV. <u>CONCLUSION</u>

After reviewing the summary judgment record, for the reasons stated, the Court concludes that no reasonable jury could find that Plaintiff was subjected to an adverse employment action because FMP refused to make a reasonable accommodation and/or failed to engage in the interactive process in good faith, nor could a reasonable jury find that Plaintiff suffered an adverse employment action because of his disability.  Because Plaintiff has not shown the requisite elements of his *prima facie* case of disability discrimination, FMP is entitled to summary judgment on Plaintiff's ADA claim.  Accordingly, FMP's Motion for Summary Judgment is granted.

An Order consistent with this Memorandum Opinion follows.


Dated:  February 12, 2024                          <u>*s/ W. Scott Hardy*</u>
                                                                W. Scott Hardy
                                                                United States District Judge


cc/ecf:  All counsel of record
             Andrew Voigt (via U.S. Mail)